## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**DEMETRICE DAVIS,**

        **Plaintiff,**                  **CIVIL ACTION NO. 04-CV-73793-DT**

    **vs.**                        **DISTRICT JUDGE AVERN COHN**

**COMMISSIONER OF**             **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**RECOMMENDATION:** This Court recommends that Defendant's Motion For Summary Judgment be DENIED, and Plaintiffs Motion for Summary Judgment be GRANTED IN PART AND DENIED IN PART.

## PROCEDURAL HISTORY

This is an action for judicial review of the final decision of the Commissioner of Social Security that the Plaintiff was not entitled to Supplemental Security Income under XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 1381a. The issue for review is whether there was adequate support for the Commissioner's decision that the Plaintiff is not disabled.

Plaintiff Demetrice Davis first filed an application for Supplemental Security Income (SSI) on March 25, 1998. (Tr. 54-55). Plaintiff's first SSI application was denied on July 27, 1998. (Tr. 32). Plaintiff sought review by an Administrative Law Judge (ALJ) who denied Plaintiff's claim on March 20, 2001. (Tr. 342). Plaintiff filed a second application for Supplemental Security Income on August 3, 1999. (Tr. 59). Plaintiff's second application was initially denied on December 13, 1999. (Tr. 37). Plaintiff sought review by an ALJ, and testified before ALJ G. Roderic Anderson at a hearing held on March 1, 2004 (Tr. 496). The ALJ denied Plaintiff's claims in an opinion issued on May 24, 2004. (Tr.

15).  Plaintiff appealed the ALJ's decision to this court.  Both Parties have filed motions for summary judgment.  Although Plaintiff's second application alleges that she has been disabled since November 3, 1995, the Commissioner's final decision on Plaintiff's prior application limits the scope of Plaintiff's instant application to the period from March 21, 2001 to the present.

## MEDICAL HISTORY

Plaintiff was born on July 22, 1966.  (Tr. 32).  Plaintiff has a history of seizures dating back to the 1980s, and Plaintiff has had prescriptions for anti-seizure medications for much of that time.  (Tr. 165).  However, blood work shows that Plaintiff frequently has much more or much less of her medication in her blood stream than she should.  On June 3, 1997 bloodwork showed Plaintiff's Phenytoin level at 5.4 micrograms per milliliter.  (Tr. 210).  The therapeutic dose of Phenytoin, her seizure medication, is considered to be 10 to 20 micrograms per milliliter of blood.  *Id.*  On August 20, 1997 a blood test showed Plaintiff at 7.7 micrograms of Phenytoin per milliliter.  (Tr. 211).  On December 29, 1997, another test showed only .9 micrograms per milliliter.  (Tr. 206).  On January 1, 1998, Plaintiff's blood tested positive for benzodiazepines, marijuana, and 31 micrograms of Phenytoin per milliliter.  (Tr. 213).  On January 29, 1998, Plaintiff's blood tested at less than .5 micrograms of Phenytoin per milliliter.

On June 13, 1998, Plaintiff was examined by Margaret Kinnard, M.D., who detailed the 15 year history of Plaintiff's seizure disorder.  (Tr. 165).  On July 10, 1998, Leonard C. Balunas, Ph.D., a psychologist, performed a disability evaluation on Plaintiff.  (Tr. 180-181).  He opined that Plaintiff had several severe social stressors and that she suffered from a single episode of a major depressive disorder.  *Id.*  Dr. Balunas gave Plaintiff a Global Assessment of Functioning (GAF) score of 65 out of 100.  *Id.*  On July 25th, 1998, Plaintiff underwent a mental residual functional capacity evaluation in connection with her first SSI application.  (Tr. 187-189).  The evaluator concluded that Plaintiff suffered some

moderate limits in maintaining concentration, pace, listening to instructions, and dealing with changes in the workplace, but concluded that none of these limitations was significant. (Tr. 187-189).

On September 21, 1998, Plaintiff's serum level of Phenytoin was 5.3 micrograms per milliliter. (Tr. 316). On October 10, 1998 Plaintiff's serum level of Phenytoin was 60.7 micrograms per milliliter, more than three times the maximum therapeutic dose. (Tr. 315). On October 15, 1998 Plaintiff's serum level of Phenytoin was 5.3 micrograms per milliliter. (Tr. 314).

Leonard Balunas performed a second psychiatric evaluation of Plaintiff on October 2, 1999. (Tr. 285). He concluded that Plaintiff's depression was in full remission, that her psychological state had significantly improved, and gave Plaintiff a GAF score of 85. *Id.* On October 16, 1999, another psychologist, Rom Krianciunas, Ph.D. examined Plaintiff and concluded that her impairments were not severe. (Tr. 288-291).

Plaintiff switched seizure medications from Phenytoin to Caramazepine sometime between October 1999 and September 2001. On September 4, 2001 Plaintiff's blood had a serum level of less than one microgram of Caramazepine per milliliter of blood, well below the therapeutic range of 4 to 10 micrograms per milliliter. (Tr. 425).

## HEARING TESTIMONY

Plaintiff testified before ALJ G. Roderic Anderson on March 1, 2004. (Tr. 496). Plaintiff appeared without counsel. (Tr. 496-500). At the beginning of the hearing, the ALJ asked Plaintiff if she knew of any documents or records she wished the ALJ to consider that were not in the administrative record. (Tr. 501). Plaintiff indicated that she thought the record was complete. *Id.* Plaintiff testified that her seizures had caused vehicle accidents in 1994 and 2001. (Tr. 504). She also testified that while she historically had grand mal seizures one to two times per month, she had not had a seizure between November 11, 2003 and the date of the hearing. (Tr. 505). During the hearing, Plaintiff referred to a

-3-

variety of medical reports that had not yet become part of the administrative record. (Tr. 505, 506, 507, 509, 529). The administrative record appears to have no reports from Plaintiff's treating physicians dated after than September 4, 2001. (Tr. 510). At the end of the hearing, Plaintiff was directed to supplement the administrative record with her new medical reports within ten days of the date of the hearing. (Tr. 531). It appears that Plaintiff did not supplement the record after the hearing.

Mary Williams, a vocational expert, also testified at the hearing. (Tr. 497). The vocational expert was asked to testify about the availability of jobs for a hypothetical person of Plaintiff's age, gender, and educational level who had certain functional limitations. First, the vocational expert was asked to testify about the ability of a hypothetical person who suffered all of the limitations described in Plaintiff's testimony to perform any of Plaintiff's past work. (Tr. 528). In response, the vocational expert testified that Plaintiff's alleged impairments would preclude all work. *Id.* The vocational expert was then asked to testify about the availability of work for a person capable of performing unskilled light work with no climbing of stairs or ladders, no operation or exposure to moving machinery, unprotected heights, or moving motor vehicles, in a low stress environment with little change in the workplace setting. *Id.* The vocational expert testified that there was a substantial number of jobs in the regional economy that such a person could perform. (Tr. 529).

## THE ALJ'S OPINION

The ALJ denied Plaintiff's claims in an opinion dated May 24, 2004. (Tr. 16-22). In detailing Plaintiff's medical history, the ALJ mistakenly described Plaintiff's hospitalization following a motor vehicle accident as having occurred in September 2004. (Tr. 18). The accident described actually occurred in September, 2001. (Tr. 422-427). The ALJ recognized his obligation to compare Plaintiff's subjective complaints with the available medical evidence, but did not note any deficiencies in the state of the record. (Tr. 18-19). The ALJ concluded from the available medical

-4-

records and Plaintiff's testimony that Plaintiff had a severe medical impairment which, although it did not meet or medically equal a listed impairment, prevented Plaintiff from performing any of her past work. (Tr. 21-22). The ALJ went on to conclude that Plaintiff was not disabled because she retained the ability to perform substantial work in the economy. (Tr. 22).

## STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). It is not the function of this court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even where substantial evidence also supports the opposite conclusion and the reviewing court would decide the matter differently. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## DISCUSSION AND ANALYSIS

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff had to show that:

(1)     he was not presently engaged in substantial gainful employment; and

(2)     he suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     he did not have the residual functional capacity (RFC) to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R.. § 416.920(a)-(e). If Plaintiff's impairments prevented her from doing her past work, the Commissioner would, at step five, consider his RFC, age, education and past work experience to determine if he could perform other work.  If she cannot, she would be deemed disabled. 20 C.F.R. § 404.1520(f).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

Plaintiff was unrepresented at the administrative hearing, and has continued to litigate her case without the benefit of an attorney.  In Plaintiff's Motion for Summary Judgment and  Response to Defendant's Motion for Summary Judgment, she argues that Plaintiff should be permitted to supplement the administrative record to include more current medical information from her treating physicians, and that Plaintiff has been unable to supplement the record previously because she cannot afford to pay to copy her records.  In particular, Plaintiff claims that her doctors recently discovered that she had been prescribed only a child's dose of anti-seizure medications, that she is now taking on a proper dosage of these, but that her seizure disorder remains uncontrolled.

The constitutional right to procedural due process provides each Social Security claimant with the right to a full and fair hearing. *Perales*, 402 U.S. at 410. "The ultimate responsibility for ensuring that every claimant receives a full and fair hearing lies with the administrative law judge." *Lashley v. Sec'y of Health and Hum. Servs.*, 708 F.2d 1048, 1052 (6th Cir. 1983). When a claimant appears unrepresented by counsel, the ALJ has a duty to exercise a heightened level of care and assume a more active role in the proceedings, assuring that favorable as well as unfavorable facts are elicited. *Id.* The ALJ's duty is heightened further when the unrepresented claimant is inarticulate or does not fully understand the administrative hearing process. *Id.*

Plaintiff has not received a full and fair hearing in this case. Because of an earlier decision by the Commissioner, Plaintiff's instant application for benefits addresses the period from March 20, 2001 to the present. While Plaintiff has regularly seen multiple doctors and has undergone a variety of tests since 2001, the administrative record contains only five pages of treatment records from any of Plaintiff's treating physicians from the relevant period. (Tr. 422-427). Without these treatment records, the record is not an adequate basis for calculating Plaintiff's current RFC or her ability to work.

In this situation, the ALJ has both a duty to develop the record adequately and has the tools necessary to do so. The ALJ has the power to issue subpoenas for documents or live testimony, and parties frequently interrogate medical sources through written interrogatory. *See e.g. Perales*, 402 U.S. at 402; *Calvin v. Chater*, 73 F.3d 87, 91 (6th Cir. 1996). When the record is adequate or a represented claimant has adequate opportunity to develop an adequate record herself, it is not typically error for the ALJ to fail to employ one or more of these methods. *See e.g.*, *Calvin*, 73 F.3d at 91-92. In this case, the ALJ did order a psychiatric review and a physical residual functional capacity review of Plaintiff in 2002. (Tr. 429-449). However, these reviews appear to be based solely upon a review of the then existing administrative record, and are therefore not adequate to

-7-

cover the gaps in that record.  The transcript of Plaintiff's hearing before the ALJ makes clear that Plaintiff, who suffers from a severe mental impairment, wanted a decision rendered on the basis of the full record, but had, at best, a poor understanding of the state of the record and the ways in which she might supplement it.

Even so, the ALJ's decision might have been supportable if the ALJ had concluded that Plaintiff was not disabled at steps one, two, three, or four of the sequential disability analysis, because the burden of persuasion at these steps is ultimately upon the Plaintiff.  However, at step five, the burden of proof is upon the Commissioner to show that a claimant remains capable of performing substantial work.  *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).  The ALJ erred by concluding, at step five, that the Commissioner had satisfied its burden.

## **RECOMMENDATION**

When the Commissioner's decision to deny benefits is based on an error or is not supported by substantial evidence on the record, "the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."  *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994).  The ALJ in this case failed to develop a record that was adequate to support any finding at step five.  The ALJ's step five finding should be vacated, and the case remanded for further proceedings pursuant to 42 U.S.C. §405 (g) sentence four.

Plaintiff's Motion for Summary Judgment should be GRANTED IN PART AND DENIED IN PART, and. Defendant's Motion for Summary Judgment should be GRANTED IN PART AND DENIED IN PART.

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1)

and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505

(6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some

issues but fail to raise others with specificity will not preserve all objections that party might have to this

Report and Recommendation.  *Willis v. Secretary*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n*

*of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules*

*of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served

upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing

party may file a response.  The response shall be not more than five (5) pages in length unless by motion

and order such page limit is extended by the Court.  The response shall address specifically, and in the

same order raised, each issue contained within the objections.

Dated: 10/24/05                          s/ Mona K. Majzoub
                                         MONA K. MAJZOUB
                                         UNITED STATES MAGISTRATE JUDGE


### Proof of Service

I hereby certify that a copy of this Report and Recommendation was served upon Demetrice

Davis and Counsel of Record on this date.

Dated: 10/24/05                          s/ Lisa C. Bartlett
                                         Courtroom Deputy